1
2
3
4
5
6
7
8
9
10
11
12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ZAMIRA S.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

CASE NO. 2:21-cv-00233-BAT

**ORDER REVERSING AND
REMANDING FOR FURTHER
ADMINISTRATIVE PROCEDURES**

13
14
15
16
17

       Plaintiff Zamira S. seeks review of the denial of her application for Supplemental

Security Income. She contends the ALJ erred by misevaluating the medical opinions and by

finding she did not require an assistive device to ambulate. Dkt. 10. The Court **REVERSES** the

Commissioner's final decision and **REMANDS** the matter for further administrative proceedings

under sentence four of 42 U.S.C. § 405(g).

18

## **BACKGROUND**

19
20
21
22
23

       Plaintiff applied for SSI on January 29, 2015, alleging disability as of January 1, 2011.

Tr. 246, 248. After her application was denied initially and on reconsideration, the ALJ

conducted a hearing and issued a decision finding plaintiff not disabled. Tr. 106-18. The Appeals

Council vacated and remanded that decision with directions to reevaluate plaintiff's mental

impairments and her residual functional capacity. Tr. 125-26. The ALJ conducted a second

hearing and, on July 27, 2020, issued a decision finding plaintiff not disabled. Tr. 15-25. Plaintiff

now seeks review of that decision.

**DISCUSSION**

**A.     Medical opinions**

Plaintiff argues that the ALJ erred by rejecting the opinion of treating doctors Anusha

Iyer, M.D., and Rebecca Simon, M.D., failing to address the opinion of reviewing doctor Renee

Eisenhauer, Ph.D., and discounting the opinions of examining doctors Richard Washburn,

William Wilkinson, and Shaun Kenderdine. Dkt. 10 at 3. In general, the ALJ must give specific

and legitimate reasons for rejecting a treating or examining doctor's opinion that is contradicted

by another doctor, and clear and convincing reasons for rejecting a treating or examining

doctor's uncontradicted opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).

*1.     Dr. Iyer and Dr. Simon*

In October 2015, Dr. Iyer filled out and Dr. Simon signed a Workfirst Documentation

Request for Medical or Disability Condition. Tr. 789-91. They opined that due to anxiety,

depression, and PTSD plaintiff was unable to concentrate, focus, and interact well with others;

her chronic abdominal pain limited her ability to stand, perform repetitive motions, bend, and

reach; and her exertional capacity was limited to sedentary work. Tr. 789-90. They opined that

plaintiff's limitations left her unable to participate in work activity. Tr. 789. They checked a box

indicating that plaintiff's condition was permanent and also opined that plaintiff's condition

would limit her ability to work, look for work, or train to work for 12 months. Tr. 790.

The ALJ gave no weight to this opinion, along with several others, finding that because

they were given prior to the period at issue, they provided no insight into plaintiff's functioning

during the relevant period. Tr. 24.

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEDURES - 2

1    Plaintiff argues that because Dr. Iyer and Dr. Simon gave their opinion 5 months before

2    plaintiff's application date and opined that the limitations they described would last at least 12

3    months, the ALJ's finding that their opinion provided no insight to plaintiff's functioning during

4    the relevant period is erroneous. Dkt. 10 at 5. Plaintiff also notes that although the relevant

5    period for her SSI claim began on the date she applied for SSI, January 29, 2015, in that

6    application she alleged disability as of January 1, 2011, meaning that Dr. Iyer and Dr. Simon

7    gave their opinion after her alleged onset date. *Id.*

8    The Commissioner argues that the ALJ's rationale for rejecting this opinion was valid

9    because "medical opinions that predate the alleged onset date of disability are of limited

10    relevance." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008); Dkt.

11    11 at 2. However, although this opinion predates plaintiff's SSI application date, it does not

12    predate her alleged onset date of January 1, 2011. This rationale does thus not apply to the

13    opinion at issue.

14    The Commissioner also puts forth several reasons why the ALJ might have found this

15    opinion inconsistent with other evidence in the record. Dkt. 2-4. But the ALJ made no such

16    findings, meaning that the Commissioner's argument is an improper post-hoc rationalization that

17    this Court cannot rely on to affirm the ALJ. *See Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th

18    Cir. 2001).

19    Dr. Iyer and Dr. Simon stated that the limitations they opined would last for at least seven

20    months into the relevant period for purposes of plaintiff's SSI claim. The ALJ's finding that the

21    opinion has no insight into plaintiff's functioning during the relevant period is unsupported by

22    the evidence and not a clear and convincing or specific and legitimate reason to reject the

23

1  opinion. The ALJ failed to give any valid reasons for rejecting the opinion of these treating

2  doctors. Accordingly, this case must be remanded for consideration of this opinion.

3      *2.*    *Dr. Eisenhauer*

4      Dr. Eisenhauer reviewed the record in September 2016 at the request of the Washington

5  State DSHS. Tr. 764-65. She opined that the diagnoses given by Dr. Wilkinson after his

6  examination—major depression, severe, and anxiety disorder, unspecified—were supported by

7  the medical evidence, as were the severity, functional limitations, and duration of plaintiff's

8  impairment. *Id.* Dr. Eisenhauer again reviewed the record for DSHS in August 2018 and opined

9  that a recent examination which noted ongoing symptoms and a diagnosis of major depression

10  was supported, as were the severity, functional limitations, and duration of plaintiff's

11  impairment. Tr. 751-52. The ALJ did not discuss either opinion from Dr. Eisenhauer.

12      Plaintiff argues that this omission was erroneous because Dr. Eisenhauer is a reviewing

13  source similar to the Social Security Administration's own medical consultants and the ALJ

14  should have considered her opinions. Dkt. 10 at 6. She also asserts that these opinions are part of

15  the evidence the Appeals Council directed the ALJ to address when it remanded the case. *Id.*

16      The Commissioner, referring only to Dr. Eisenhauer's 2016 opinion, responds that the

17  ALJ was not required to discuss the opinion because it was not significant, probative evidence

18  that the ALJ must give a reason to reject, arguing that the opinion was merely a brief summary of

19  Dr. Wilkinson's examination findings and a checkbox indicating that limitations were supported.

20  Dkt. 11 at 6-7. The Commissioner also argues that the opinion was inconsequential to the ALJ's

21  decision and any error in failing to discuss it was therefore harmless. Dkt 11 at 6-7.

22      The ALJ erred by failing to discuss these opinions. Dr. Eisenhauer gave her opinions

23  after reviewing medical evidence in the record, agreeing with the diagnoses and limitations

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEDURES - 4

included in the records she reviewed. One of those opinions was Dr. Wilkinson's, which the ALJ discounted in part by finding that it was inconsistent with other evidence in the record—a finding that very well may have been different if the ALJ had considered Dr. Eisenhauer's opinion that Dr. Wilkinson's findings were supported.

Because the Court is remanding this case for further administrative proceedings, it need not decide if this error was harmful. Rather, the Court directs the ALJ to consider these opinions on remand.

### 3.     *Dr. Washburn, Dr. Wilkinson, and Dr. Kenderdine*

Dr. Washburn examined plaintiff in April 2016 and opined that her overall level of disability was marked to severe. Tr. 476-80. He opined that plaintiff was easily distracted and had poor auditory attention and concentration, and she did not appear to have the level of cognitive functioning and emotional stability needed to cope with the normal stress of full-time gainful employment. Tr. 480. He opined that her ability to work depended on her ability to use mental health counseling to think differently about herself and her environment, and she also likely needed a significant improvement in her physical health as well as obtaining some work skills. *Id.*

Dr. Wilkinson examined plaintiff in August 2016 and opined that plaintiff would have marked limitations in numerous areas of functioning and moderate limitations in nearly all the rest. Tr. 669-70. Tr. 667-70.

Dr. Kenderdine examined plaintiff in May 2015 and opined that she was severely limited in following detailed instructions, markedly limited in numerous other areas of functioning, and moderately limited in nearly all the rest. Tr. 745-47.

1    The ALJ gave little weight to these opinions. Tr. 23-24. Addressing the opinions

2    together, the ALJ found that while plaintiff displayed cognitive deficits in Dr. Washburn's

3    examination, she had within normal limit memory, concentration, and fund of knowledge in Dr.

4    Wilkinson's exam. Tr. 24. The ALJ noted that plaintiff was consistently adequately groomed,

5    cooperative with genuine and appropriate affect, and normal behavior, speech, and thought

6    process and content on both exams. *Id.* The ALJ found that the opinions were inconsistent with

7    the record as a whole, noting that plaintiff has acknowledged that her symptoms improved when

8    she took her medications as prescribed and that Dr. Iyer—whom the ALJ identified as a treating

9    psychiatrist—noted that plaintiff was managing her anxiety and stable on her medications. *Id.*

10   The ALJ also found that subsequent "psychiatric exams" mostly showed plaintiff as alert,

11   cooperative, and in no distress with normal mood, affect, judgment and insight, and recent

12   treatment notes show progressive improvement in symptoms and overall functioning with

13   medication. *Id.* The ALJ concluded that these factors were inconsistent with marked to severe

14   impairments. *Id.*

15   Plaintiff argues that the ALJ's assessment reveals a superficial and inaccurate review of

16   the record and that the ALJ did not explain how the normal findings he cited were inconsistent

17   with the doctors' opinions, particularly given that the ALJ assessed all three opinions together

18   but did not specifically mention Dr. Kenderdine's opinion. Dkt. 10 at 9-12. She also argues that

19   the ALJ's misidentification of Dr. Iyer, plaintiff's primary care physician, as a psychiatrist,

20   resulted in the ALJ relying on Dr. Iyer's findings as psychiatric exams rather than the general

21   "systems reviews" of a primary care physician. Dkt. 10 at 12-13.

22   The Court finds that the imprecision and inaccuracies in the ALJ's assessment of these

23   opinions leave the Court unable to find that the ALJ's weighing of these opinions was supported

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEDURES - 6

by substantial evidence and free of legal error. First, the ALJ included Dr. Kenderdine's opinion in a bullet point list of opinions he discounted but made no mention of the opinion in the subsequent paragraph giving reasons for discounting the listed opinions despite identifying the other two doctors by name and discussing their opinions with specifics. The ALJ's failure to discuss Dr. Kenderdine's opinion or give any specific reasons for discounting it leaves the Court unable to ascertain whether the ALJ gave valid reasons for discounting the opinion.

Next, the ALJ misidentified Dr. Iyer as a treating psychiatrist. An ALJ will generally give more weight to a specialist's opinion about medical issues related to her area of specialty than to the opinion of a source who is not a specialist. 20 C.F.R. § 416.927(c)(5). This misidentification renders it unclear if the ALJ gave Dr. Iyer's opinion undue weight as a specialist. In addition, the ALJ relied on Dr. Iyer's treatment notes as "psychiatric exams" rather than general exams conducted as part of a primary care visit. These errors render invalid the ALJ's reliance on Dr. Iyer's treatment records to undermine the examining psychologists' opinions.

And finally, plaintiff has identified inaccuracies in the ALJ's discussion of the record. For example, the ALJ found that Dr. Wilkinson noted plaintiff's memory, fund of knowledge, concentration, and abstract thought were within normal limits. Tr. 24. However, although he checked the boxes indicating these areas were within normal limits, Dr. Wilkinson also stated that he was unable to assess her in these areas due to language barriers and possibly the effects of her medications; he also expressed some concerns about her functioning in these areas, such as the slowness of her responses and need for questions to be repeated or elaborated. Tr. 672. These comments undermine the ALJ's finding that there was an inconsistency between Dr. Washburn's findings of cognitive deficits and Dr. Wilkinson's findings of normal cognitive functioning.

Given these omissions and inaccuracies, the ALJ court finds that the ALJ's assessment of these opinions is not supported by substantial evidence or free of legal error. The ALJ shall reassess these opinions on remand, taking care to give valid reasons for the weight given to each doctor's opinion.

**B.     RFC finding**

Plaintiff argues that the ALJ erred in assessing plaintiff's RFC by not including the need for an assistive device to ambulate and by finding that she could perform light work. Dkt. 10 at 15. With respect to the need for an assistive device, plaintiff argues that the ALJ did not adequately address why plaintiff did not need an assistive device. *Id.* Plaintiff testified that she used a walker with four wheels to walk in front of her house and while at home, but she could not walk too far because of swollen arms and legs. Tr. 63. When the ALJ asked why she needed a walker plaintiff answered that she could not walk much or stand much so in addition to medication the doctor gave her a walker so she could walk around the house and in front of the house and when she gets tired she can sit down to rest. *Id.* at 63-64. The record shows that plaintiff's primary care doctor prescribed a rolling walker with seat in August 2019 after plaintiff stated that she wheezes and gets tired when she walks and gets pain in her feet, back of knee, and back. Tr. 1303-04.

The ALJ assessed plaintiff's need for a walker as follows: "The claimant testified to use of a walker on occasion. However, it does not appear that a walker is medically necessary. As discussed, physical exams show full strength and normal gait. Recent treatment notes indicate she was taking walks." Tr. 23.

This is a conclusory statement that does not cite to the record and does not give an explanation as to how the ALJ concluded that a prescribed assistive device was not medically

necessary or how plaintiff's reports of taking walks is inconsistent with her testimony that she used a walker. On remand, the ALJ shall reevaluate plaintiff's need for an assistive device to ambulate.

With respect to her ability to perform light work, plaintiff reasserts that the ALJ failed to address Dr. Iyer and Dr. Simon's October 2015 opinion, which opined that plaintiff was limited to sedentary work, arguing that there is no other treating or examining opinion that is inconsistent with this. Dkt. 10 at 17. Plaintiff also points out that the medical consultants, whose opinions the ALJ relied on, did not review the records from 2019 and were therefore not aware that plaintiff's treating providers had prescribed a rolling walker. *Id.* Plaintiff also points out that the VE testified that the need for a walker to stand and walk would be more consistent with sedentary work assuming that that the objects handled were 10 pounds or less and that, if the ALJ had found plaintiff capable of only sedentary work, she would not have been able to perform her past work and would be considered disabled under the grids. *Id.*

Because the Court is remanding this case for further consideration of medical opinions that affect plaintiff's exertional limitations, the ALJ will necessarily have to reevaluate plaintiff's physical RFC. As part of this reevaluation, the ALJ shall reevaluate whether plaintiff requires the use of an assistive device to ambulate and the effect of Dr. Iyer's opinion on plaintiff's exertional limitations.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reevaluate the opinion of Dr. Iyer and Dr. Simon, shall consider the opinion of Dr. Eisenhauer, and shall reevaluate the opinions of Dr. Washburn, Dr. Wilkinson,

and Dr. Kenderine. The ALJ shall reevaluate plaintiff's need for an assistive device to ambulate and shall reevaluate her RFC. The ALJ shall further develop the record and redo the five-step disability evaluation process as the ALJ deems necessary and appropriate to issue a new decision.

DATED this 8th day of October, 2021.

BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEDURES - 10